AMERICAN MORTGAGE CO. OF SCOTLAND *v.* HILL, trustee.

| 92 | 207 |
| 93 | 22 |
| 92 | 297 |
| 119 | 79 |

1. The minutes of the superior court applicable to a suit determined more than twenty years ago being lost or destroyed, the presumption is, nothing to the contrary appearing, that a verdict which should have existed as the foundation of a judgment which has

been preserved and is now produced, did in fact exist and was duly entered on the minutes, or that the judgment itself was entered on the minutes, if that was necessary to give it validity without a verdict, a sale of land having taken place by virtue of an execution based on the judgment, and this sale having been acquiesced in by the parties concerned for fifteen or twenty years after it was made. In the present case, treating the title of the defendant in execution as derived through the sheriff's sale, the property should have been found subject.

2. The defendant in execution having whilst in possession of the premises conveyed the land in dispute to his creditor as security for the debt now sought to be collected, and having an estate for life in the land under the will of his mother, which can be enjoyed by him or his assigns without interfering with the trust estate in remainder which the will creates in. behalf of his wife and children, the court certainly erred in finding for the claimant (the trustee) so far as the life-estate was concerned. The finding should have been that the property was subject as to the life-estate, but not subject as to the remainder, if the present case is to be controlled by the terms of the will and not by the sheriff's sale under the judgment.

July 17, 1893.

Levy and claim. Before Judge GUERRY. Quitman superior court. September term, 1892.

An execution against W. M. Tennille was levied on land which was claimed by W. A. Hill as trustee for Mary J. Tennille *et al.* By agreement the case was submitted to the judge without a jury. He held the property not subject to the execution, and afterwards denied a new trial, and the plaintiff excepted. Errors are assigned upon the ruling, that an estate in remainder passed under the will of Lucinda M. Tennille, the mother of W. M. Tennille, to his wife and children, and that the land in dispute could not be subjected to the execution; and upon the allowance to the claimant to introduce in evidence, over plaintiff's objections, a certified copy of the will of Lucinda M. Tennille, and the petition and order under which the claimant was appointed as trustee for Mary J. Tennille and others; the objections being, that this evidence was illegal and irrelevant, it being ap-

parent from the will that no estate passed thereunder to the wife and children of W. M. Tennille, but the title to the property in dispute passed to him, and that Hill had no right to be appointed trustee under the will, nor to hold or control the property as trustee.   Before the introduction of the evidence objected to, the claimant introduced a marriage contract between W. A. Tennille and Lucinda M. Fort, afterwards Tennille, dated October 10, 1842, and recorded January 6, 1843, wherein all her property is preserved as her separate estate, and she is expressly authorized to dispose of all of her property by will.   It was admitted that she was the mother of W. M. Tennille, who was the only child of the marriage alluded to; that at the time of her death she was the owner of the land in dispute, which was included in the marriage settlement; and that she died on August 11, 1864, and her husband died on October 21, 1864.

The will in question was dated February 13, 1863, and was admitted to probate on February 6, 1865.  It directs that her executors shall keep up and cultivate her plantation with her slaves thereon for the purposes hereafter mentioned, but that if the business shall become unprofitable for reasons to be judged of by the executors, they may sell and dispose of the whole of her estate, both real and personal, in such manner as they shall judge will best contribute to the interest of her estate, and invest the proceeds of sale in interest bearing securities.   In the next item she gives $1,000 to the son of her brother, and further gives the same amount each to three named females in trust for their sole and separate use and benefit during their lives and at their deaths to be equally divided among their children, and should they die without children these legacies should go to their brothers and sisters.   These legacies are directed to be paid from the property and income from the plantation, without interest, whenever the executors

see proper and can conveniently spare the money. Under this item an absolute estate of $500 each is given to one Armstrong and his brothers, to be paid in the same way. The next item gives to Tennille Patterson an unconditional legacy of $2,000. The next gives certain negroes to the children of her brother, and certain lands in Alabama then in his possession, with the direction that the land and negroes be used and possessed by her brother and his wife during their lives as a home for themselves and children, the annual income and profits thereof to be applied to the support and education of their children and themselves during their lives, and at their deaths to be divided in equal shares between their children. The next item is in these words:

" I give and bequeath to my beloved son, William Meigs Tennille, all the rest and residue of my estate of whatever character the same may be, to have and to hold to him, his heirs and assigns forever, subject however to the following incumbrances, conditions and provisions, to wit: that my beloved husband shall have the control and management of my whole estate for and during his life, with the power and authority to plant and gather the crops and curtail [control?] the slaves and other property, sell and dispose of the crops and receive the proceeds arising from the sale during his life, with the power and authority to plant and gather the crops and control the slaves and other property, sell and dispose of the crops and receive the proceeds arising from the sale during his life, in trust for my said son, without accountability for the use of the same, so that no unnecessary waste shall be committed, nor shall the same be taken for any debts or liabilities against him at the date hereof. And I do hereby appoint him as my testamentary guardian of my said son during his minority, not doubting that my said beloved husband from his age and experience will manage and control said estate for the best interest of our said son before and after his maturity, for and during the life of my said husband. And if my said son shall die before his said father, my said husband, he shall continue to manage my said

estate in connection with my other executor, Francis
A. Tennille, my husband's brother, who shall manage
the same together in the same way and manner afore-
said, provided my said husband from his age or debility
shall at any time require his said brother's assistance,
taking and receiving to himself, however, the proceeds
arising from my said estate for his support and in trust
for my said son, and preserving the *corpus* of the prop-
erty in case of his my son's death, for the benefit of the
wife and children of my said son, if he should have at
his death, or in default thereof, for the benefit of the
bequest hereinafter made."

The tenth item gives certain special money legacies
to be paid in the manner specified, by the executors or
the legal representative having the estate in charge,
upon the contingency that the son of the testatrix should
die without wife or child living at the time of his death
and after the death of the husband of testatrix; and in
such contingency the residue of the estate is given to
the next of kin of her son.   The last item appoints her
husband W. A. Tennille, and his brother Francis A.
Tennille, as her executors, and W. A. Tennille as testa-
mentary guardian and trustee of W. M. Tennille.   The
petition of Mary J. Tennille, which was joined in by her
husband W. M. Tennille, was filed in the superior court
for the benefit of herself and their minor children, and
of other minor children of W. M. Tennille by a former
wife, for the appointment of a trustee to keep and pre-
serve the trust estate created under the will of Lucinda
M. Tennille, and in place of W. A. Tennille, the former
trustee, deceased.   On this petition W. A. Hill was ap-
pointed trustee for such purpose.   The filing of the peti-
tion and the order of appointment were of the same
date, February 11, 1890.   It was agreed that neither of
the executors named in the will ever qualified as such,
and that Delaware Morris was appointed administrator
with the will annexed, at the March term, 1865, and

was discharged at the May term, 1870, of the court of ordinary.

The material facts touching the other assignments of error are set forth in the opinion.

W. E. SIMMONS and W. C. WORRILL, for plaintiff.

W. D. KIDDOO, *contra.*

BLECKLEY, Chief Justice.

The ultimate question in the court below was whether the premises levied upon by virtue of an execution in favor of the mortgage company against W. M. Tennille was subject to sale as his property, as against a claim thereto interposed by Hill as trustee for Tennille's wife and children.  At the death of Tennille's mother in August, 1864, these premises belonged to her, and she died testate, leaving him her residuary legatee, he being her only child.  Her husband and her husband's brother were nominated in the will as executors, but they never qualified.  Her husband died in October, 1864, and in the next year one Morris was appointed administrator with the will annexed.  He obtained letters of dismission in 1870.  W. M. Tennille arrived at majority in 1868.  The administrator put him in possession of all the lands of the estate as his own property.  He sold a half-interest in them to one Burnett.  Thereafter, in February, 1870, all these lands were sold at sheriff's sale as the property of Mrs. Tennille's estate, by virtue of an execution based on a judgment rendered by Quitman superior court, at November term, 1868, in favor of Bryan against Morris, as administrator with the will annexed of Mrs. Tennille, and the sheriff conveyed the whole to Burnett and W. M. Tennille as the purchasers at that sale.  He put Burnett in possession, who held the premises now in controversy until a voluntary partition of the whole lands was made between him and W. M. Tennille.  By that partition Burnett's interest

in these premises ceased, and from thenceforth Tennille had and held the exclusive possession up to the year 1890, if no longer. While thus in possession he conveyed the premises by absolute deed as security for a loan of money, this deed being made under §1969 of the code. The ownership of the debt created for the loan, and title to the premises held as security therefor, passed from the lender into the mortgage company, which obtained judgment against Tennille for the amount of the loan in March, 1889. After revesting title in Tennille as provided for by §1970 of the code, the premises were levied upon as his property in July, 1892, by virtue of an execution founded on this judgment, and a claim was interposed by Hill as trustee for Tennille's wife and children. By consent of parties this claim was tried by the presiding judge without a jury. His finding was in favor of the claimant, and a motion made by the mortgage company for a new trial was overruled. The contention by the mortgage company is, first, that by virtue of the sheriff's sale and the conveyance thereunder to Burnett and Tennille and the subsequent partition between these two, Tennille had absolute fee simple title to the property levied upon ; second, that if he acquired no title by the sheriff's sale, he has title, by virtue of his mother's will, to at least a life-estate in the premises, and that that estate, if no more, ought to have been found subject to sale under the execution; third, that no trust in behalf of Tennille's wife and children was created by the will, and therefore that the appointment of Hill as trustee, which occurred in February, 1890, was without any validity.

1. Several objections were made to the sheriff's sale and to the title of Tennille in so far as it depends upon the deed made by the sheriff in pursuance of that sale, but only one of them was passed upon by the trial court. The others not having been adjudicated will be left for

determination on a future trial. The objection ruled
upon was, that the judgment on which the execution
was founded was entered up and signed by the plaintiff's
attorney, and no verdict was produced or proved on
which such a judgment could have rested, nor did it ap-
pear that the judgment itself had been entered on the
minutes of the court so as to make it good as a judg-
ment of the court rendered without the verdict of a
jury. The judgment was more than twenty years old,
and the minutes of the court applicable to the term at
which the judgment was rendered were lost or destroyed.
There was no proof tending to show that a proper ver-
dict was not entered on the minutes,.or, if no verdict,
that the judgment itself was not so entered. Had it
appeared affirmatively that the minutes contained no
verdict and no entry of the judgment, then the execu-
tion might possibly be held as having had no legal judg-
ment to support it; but without showing these things
affirmatively, the presumption is, and ought to be after
such a lapse of time, that the minutes contained what
they ought to have contained, that is, either a verdict
on which a judgment signed by the plaintiff's attorney
could properly be based, or a copy of that judgment and
the signature of the judge to the minutes of the day's
proceedings on which the entry took place. To invoke
such a presumption for upholding a sale made under an
execution based on the judgment, which sale was acqui-
esced in by the parties concerned for some twenty years
before any attack was made upon it, would be to rightly
use the doctrine of presumptions and to treat with proper
deference a judgment which the parties to it and the
officers of court in acting upon it must have regarded
as legal and binding, and which for more than a score
of years has stood without any proceeding to reverse or
set it aside. Rather than rip up a judgment and a sale
under it, both of them so old, any presumption should

be indulged which it is legally possible to invoke. The action in which the judgment was rendered was based on a promissory note made by the testatrix, Mrs. Tennille, and at the trial of the present case none of the papers connected with that action could be found, except the declaration and the judgment as entered up thereon and signed by the plaintiff's attorney. It did not appear whether any issuable defence had been filed on oath or not. The docket on which any defence would have been noted, according to regular practice, was lost or destroyed. If no such defence was filed, the case was one in which, under the constitution of 1868, judgment should have been rendered by the court without the intervention of a jury. The judgment produced, though not signed by the presiding judge, would be a compliance with that requisite of the constitution if it was entered on the minutes of the court. This has been heretofore ruled. *Odom* v. *Causey,* 59 *Ga.* 607; *Jones* v. *Word,* 61 *Ib.* 26; *Tharpe* v. *Crumpler,* 63 *Ib.* 273. What we now rule is, that under the circumstances of this case, a presumption that it was so entered is to obtain, the ground of this presumption being that it ought to have been so entered if no issuable defence on oath was filed. The only possible alternative is that such a defence was filed; and if it was, then there ought to have been a verdict, and that verdict ought to have been entered on the minutes of the court. The principle of the foregoing presumption covers this alternative, for if a jury ought to have passed upon the case and their finding ought to have been entered on the minutes, these things should be presumed, in favor of the judgment of a court of general jurisdiction, to have been done, the same, on the hypothesis involved, being necessary prerequisites to the rendition of the judgment. It follows, we think manifestly, that as against the one objection to the judg-

v 92-20

ment which we have considered and discussed, the premises levied upon should have been found subject.

2. But conceding that the case is to be tried by the terms of the will of the defendant's mother, the will gives him an estate for life which could be enjoyed by him or his assignees without interfering with the trust estate in remainder which the will creates in behalf of his wife and children. This being so, the court certainly erred in finding for the claimant, the trustee, so far as this life-estate was concerned. The administrator with the will annexed put Tennille in possession, and while in possession he conveyed the land in dispute as security for the debt now sought to be collected. If he has a life-estate in it and not the whole fee, why should not this life-estate be devoted to the payment of the debt? He is a grown man and has no need of a trustee to manage and control his life-interest in the property. If he can use and enjoy it without interfering with the trust in remainder, why may not his assignee or vendee do so too? And if his own assignee or vendee could do it, why could not one who comes in as a purchaser at a judicial sale? According to the true spirit of our law at present, whatever a man can enjoy himself, as property, can be sold for the payment of his debts unless it be exempted from levy and sale in the manner pointed out by the homestead and exemption laws. The material terms to be noticed in the will are, that the residuary clause gives to Tennille the whole residue "to have and to hold to him, his heirs and assigns forever, subject, however," to certain specified incumbrances, conditions and provisions. Amongst these was, that the income of the whole estate was to be received by the husband of the testatrix during his life, without accountability for its use. Another was, that the husband was to preserve the *corpus* for the benefit of the wife and children of the son, if any the son should have at his death, or in de-

fault thereof, for other beneficiaries afterwards specified. The husband having died in 1864, his interest terminated, and this extinguished his interest in the income together with the trust for the son as to the income, which was a personal trust without accountability; but the trust as to the *corpus* survived. That trust, however, did not interfere, certainly as to realty, with full and complete enjoyment of the property by the son during his own life. No trust as to him, apart from the office of executor, appears to have been contemplated by the testatrix, except a personal one in her husband which was to continue for his lifetime only. As the terms of the will relevant to this litigation are set out in the official report, there is no need to transcribe them in this opinion.

The court certainly erred in finding nothing whatever subject to sale under the levy and claim in controversy.

*Judgment reversed.*